Angela Marie Garrison (CONNER), Plaintiff,

v.

**R.H. BARRINGER DISTRIBUTION COMPANY, Defendant.**

No. 1:00CV01146.

United States District Court, M.D. North Carolina.

April 26, 2001.

Romallus O. Murphy, Greensboro, NC, for Angela Marie Garrison Conner.

Angela Marie Garrison Conner, Greensboro, NC, pro se.

Denis E. Jacobson, Tuggle Duggins & Meschan, P.A., Greensboro, NC, for R.H. Barringer Distribution Co.

## MEMORANDUM OPINION

BULLOCK, District Judge.

This matter is before the court on a motion to dismiss by Defendant R.H. Barringer Distribution Company ("Defendant"). Defendant argues that a complaint filed *pro se* by Plaintiff Angela Marie Garrison ("Plaintiff") fails to state a claim upon which relief can be granted. Defendant requests that this court dismiss Plaintiff's action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendant's motion to dismiss will be denied.

## BACKGROUND

The following facts are those set out by Plaintiff in the complaint and are taken to be true for purposes of this motion to dismiss. Plaintiff began working second shift at Defendant's Greensboro, North Carolina, distribution warehouse on March 18, 1999. Defendant distributes Anheuser–Busch products. Other than Plaintiff and her immediate supervisor, Defendant's warehouse workforce was composed entirely of men, some of whom were prison inmates on work release.

Toward the beginning of April 1999, one of Plaintiff's male co-workers began to make sexually suggestive and offensive comments to her. These comments included remarks such as, "You have a nice butt," and a proposition to rendezvous at a

fellow worker's bedroom. Plaintiff immediately reported the harassment to supervisors. After Plaintiff notified management, the harassment temporarily ceased.

Harassment of the Plaintiff by the same co-worker recommenced, however, on July 15, 1999. On that date, the co-worker approached Plaintiff from behind and kissed her ear. Once again, Plaintiff promptly reported the incident to management. Plaintiff's supervisor met with both employees, and the co-worker was told not to have any further interaction with Plaintiff.[1] Contrary to this instruction, as Plaintiff left work that night, the co-worker followed Plaintiff to her car and asked her what was wrong.

Troubled by the co-worker's disregard of the instruction to leave her alone, Plaintiff filed a sexual harassment complaint with Defendant's Human Resources Manager on July 20, 1999. Two days later, July 22, 1999, Plaintiff's supervisor notified Plaintiff that her work hours were being changed from second to first shift to prevent any further contact with the harassing co-worker. Plaintiff asserts that the supervisor knew that she would be unable to work first shift because of a conflict with child-care responsibilities. When Plaintiff reminded the supervisor of this conflict, the supervisor said that Plaintiff had "no choice" and "that [she] had to try." (Pl.'s Compl. ¶ 7). On July 28, 1999, Defendant discharged Plaintiff for failing to appear for work.

Plaintiff brings the present action against Defendant under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. Plaintiff asserts two claims under Title VII: a hostile work environment sexual harassment claim and a retaliation claim.

## ANALYSIS

■ Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the court, upon a motion of the defendant, to dismiss all or part of a plaintiff's cause of action for failure to state a claim upon which relief can be granted. The court must not grant such a motion, however, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). In making this determination, the court should construe the complaint in the light most favorable to the plaintiff and must accept all of the plaintiff's well-pleaded allegations as true. *Mylan Labs.*, 7 F.3d at 1134. In addition, the court recognizes the need to construe liberally *pro se* complaints and to allow wide latitude in interpreting the sufficiency of such pleadings. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir.1985).

Title VII provides a cause of action for employees if "sexual harassment creates a hostile work environment or abusive atmosphere." *Smith v. First Un. Nat'l Bank*, 202 F.3d 234, 241 (4th Cir.2000). Defendant argues that Plaintiff's hostile work environment claim should be dismissed under Rule 12(b)(6) because the allegations in the complaint fail to satisfy two essential elements of the claim. To prevail on a

---

1. From the complaint it is unclear whether the supervisor, Plaintiff, or both instructed the co-worker not to interact with Plaintiff anymore. In Paragraph 13 of the complaint, Plaintiff states that "[t]hey [two supervisors] had a meeting with Mark [the co-worker] and Me [sic], and told me to tell Mark to leave me alone." In Paragraph 14 of the complaint, however, Plaintiff states that "[b]ecause of Mark's disregard to *Linda Ball's [the supervisor's] directions to leave me alone*, and my request, not to bother me, on July 20, 1999, I filed a sexual harassment complaint." (emphasis added).

Title VII hostile work environment claim, an employee must establish four elements: (1) that she was harassed "because of" her "sex"; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently pervasive or severe to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. *See Smith*, 202 F.3d at 241. Defendant does not dispute that Plaintiff was harassed because of her sex or that the harassment was unwelcome. Defendant contends that the complaint falls short in establishing the third and fourth elements of the hostile work environment claim.

Defendant argues that courts, including the Fourth Circuit, have found conduct far more egregious than the conduct alleged in the complaint to fail to satisfy the "severe or pervasive" element of a hostile work environment claim. *See, e.g., Adusumilli v. City of Chicago*, 164 F.3d 353 (7th Cir. 1998) (holding that even though employee was teased about being a prostitute, subjected to sexual innuendo, and on four occasions touched by a co-worker on the arm, fingers, or buttocks, this did not satisfy "severe or pervasive" element); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d 745 (4th Cir.1996) (finding allegations that the plaintiff's homosexual supervisor made sexual comments, bumped into him on numerous occasions, gave him a congratulatory kiss in a receiving line, and stared at him in the bathroom, not to be severe or pervasive); *Saxton v. AT & T*, 10 F.3d 526 (7th Cir.1993) (holding that two incidents of harassment, including a supervisor rubbing his hand along an employee's upper thigh and kissing her, were not severe or pervasive).

The cases cited by Defendant (*Adusumilli, Hopkins,* and *Saxton*) are distinguishable from the present case in that they all involved a summary judgment motion rather than a motion to dismiss. To survive a summary judgment motion, a plaintiff must produce "evidence from which a [fact-finder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In contrast, a motion to dismiss tests the legal sufficiency of the plaintiff's complaint. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 951 F.Supp. 1224, 1227 (M.D.N.C.1996). For a plaintiff to survive a motion to dismiss does "not require a claimant to set out in detail all the facts upon which he bases his claim." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. "To the contrary, all the [Federal Rules of Civil Procedure] require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (quoting Fed.R.Civ.P. 8(a)(2)). The Fourth Circuit has stated that "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).[2] Plaintiff's complaint satisfies this requirement.

---

**2.** Various circuits have come to differing conclusions as to the level of factual specificity that a complaint must contain to survive a motion to dismiss. *Compare, e.g., American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir.1986) ("[A] complaint is not required to allege all, *or any,* of the facts logically entailed by the claim.") (emphasis added), *and Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C.Cir.2000) ("[A] plaintiff need not set forth the elements of a *prima facie* case at the initial pleading stage.") *with Pyles v. United Air Lines, Inc.*, 79 F.3d 1046, 1049 (11th Cir.1996) (finding that plaintiff "failed to state a claim because he has pled nothing which would satisfy the third and fourth elements" of the cause of action asserted).

As to the "severe or pervasive" element of Plaintiff's hostile work environment claim, the complaint first sets out a general allegation of sexual harassment. (*See* Pl.'s Compl. at ¶ 2.) ("Beginning on or about April 1, 1999, I began to be subject to Acts of Sexual Harassment [sic] by a fellow male warehouse co-worker in the form of sexually offensive remarks and comments."). Plaintiff then provides three specific examples of the harassment that she endured: two examples of harassing remarks and the physical encounter in which the co-worker kissed her on the ear. Plaintiff does not state that those specific instances constitute the full extent of the harassment she suffered. The complaint states that the co-worker made offensive remarks *"such as"* those specified in the complaint, implying that these examples are meant to be illustrative, rather than exhaustive. (Pl.'s Compl. at ¶ 10) (emphasis added). From these facts the court can infer that the "severe or pervasive" element of Plaintiff's hostile work environment claim may be present. *See Riley v. Buckner*, 2001 WL 15193 at *3 (4th Cir. Jan. 8, 2001) ("We are satisfied that [general] allegations, coupled with a specific example ... are sufficient, though barely, to ... survive[ ] a motion to dismiss."); *see also Herdrich v. Pegram*, 154 F.3d 362, 369 (7th Cir.1998), *rev'd on other grounds*, 530 U.S. 211, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) ("A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory. But such allegations need only state a possible claim, not a winning claim.").

■ Plaintiff has also alleged facts sufficient for the court to infer the presence of the fourth element of a hostile work environment claim, that there exists some basis for imputing liability to the employer. In cases involving harassment by a fellow employee, "employers are liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt *and adequate* action" to stop the harassment. *Mikels v. City of Durham*, 183 F.3d 323, 332 (4th Cir.1999) (emphasis added). The complaint indicates that Plaintiff notified Defendant of harassment on three occasions: in early April 1999 after the co-worker made harassing remarks to her; on July 15, 1999, after the co-worker kissed her on the ear; and on July 20, 1999, when Plaintiff lodged a formal complaint with the Human Resources Department after the co-worker followed her to her car and asked her what was wrong. On at least two of these occasions, Defendant appears to have responded promptly to Plaintiff's report of harassment. A prompt response does not necessarily equate to an adequate response, however, if an employer's remedial measures are inadequate.

Defendant's response to the first two notices of sexual harassment failed to stop further harassment. After reporting the co-worker's harassing comments to a supervisor in April 1999, Plaintiff enjoyed a temporary respite from harassment only to have it recommence when the co-worker kissed her on the ear in July 1999. When Plaintiff notified her supervisor of the kissing incident on July 15, 1999, Defendant apparently[3] instructed the co-worker to avoid any further interaction with Plaintiff. Nevertheless, the co-worker followed Plaintiff to her car that same night and asked her what was wrong. Finally, Defendant's response to Plaintiff's formal

**3.** Once again, it is unclear whether Defendant instructed the co-worker not to interact with Plaintiff or Defendant simply told Plaintiff to tell the co-worker not to bother her any more. (*See* Pl.'s Compl. at ¶¶ 13, 14).

complaint entered with the Human Resources Department on July 20, 1999, can hardly be deemed adequate in that it placed the burden of alleviating further harassment on the Plaintiff and effectively terminated Plaintiff's employment. According to Plaintiff, Defendant "knew that [Plaintiff] could not work first shift," but still reassigned her to that shift. (Pl.'s Compl. at ¶ 7). When Plaintiff reminded her supervisor that she was unable to work first-shift hours, the supervisor simply stated "that [Plaintiff] had no choice, that [she] had to try." (Pl.'s Compl. at ¶ 7). While a transfer or change of shift might sometimes prove an adequate response to a complaint of sexual harassment, the approach taken by Defendant, which failed to consider Plaintiff's particular circumstances, amounted to a *de facto* discharge of the victim of harassment and does not qualify as an adequate response. *See Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993) (finding that an employer acted prudently and sensitively in transferring to another department an employee who complained of sexual harassment when the transfer caused no inconvenience to the employee). From these facts the court can infer that there is a basis for imputing liability to Defendant. Consequently, the court will deny Defendant's motion to dismiss Plaintiff's hostile work environment claim.

■ Plaintiff's complaint also presents sufficient factual allegations for the court to infer the presence of the requisite elements of a Title VII retaliation claim. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of [its] employees ... because [the employee] has opposed any practice made an unlawful employment practice by [Title VII]." 42 U.S.C. § 2000e–3(a). "To establish a prima facie case of retaliation under Title VII, a plaintiff is required to

prove (1) that she engaged in a protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal connection between the first two elements." *Dowe v. Total Action Against Poverty,* 145 F.3d 653, 656 (4th Cir.1998). Defendant does not dispute that Plaintiff engaged in protected activity on the two occasions she reported harassment to her supervisor and when she filed a formal sexual harassment complaint with the Human Resources Department on July 20, 1999. Instead, Defendant contends that no adverse employment action was taken against Plaintiff because "there is no allegation [in the complaint] that the Plaintiff's salary, benefits, job duties or anything about her job responsibilities changed other than the time that she would be working." (Br. in Supp. of Def.'s Mot. to Dismiss at 8). There are two shortcomings to Defendant's argument. First, it ignores the fact that Plaintiff was terminated on July 28, 1999. Unquestionably, this termination constitutes an adverse employment action. In addition, as discussed earlier, transferring an employee to another shift does not necessarily amount to an adverse employment action, but considered in light of Plaintiff's claim that Defendant knew she would be unable to work during first shift hours, the transfer could be characterized as an adverse employment action. Therefore, the court finds that the complaint alleges facts sufficient to infer that an adverse employment action was taken against Plaintiff.

As to the third element of the *prima facie* showing of retaliation, an inference of causation may arise from a relatively short time span between the protected activity and the adverse employment action. *See Holland v. Jefferson Nat'l Life Ins. Co.,* 883 F.2d 1307, 1310, 1314–15 (7th Cir.1989) (finding such an inference when approximately one week after complaining the plaintiff suffered adverse treatment); *De*

*Cintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir.1987) ("Proof of causal connection can be established *indirectly* by showing that the protected activity was followed closely by discriminatory treatment."); *Strickland v. MICA Info. Sys.*, 800 F.Supp. 1320, 1323–24 (M.D.N.C. 1992) ("A causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."); *see also Dowe*, 145 F.3d at 657 ("A lengthy time lapse between the employer becoming aware of the protected activity and the alleged adverse employment action ... negates any inference that a causal connection exists between the two."); *Guthrie v. Blue Ridge Sav. Bank*, 114 F.Supp.2d 431 (W.D.N.C. 2000) (a three-year time lapse between the employer's knowledge of protected activity and the adverse employment action precluded a finding of any causal connection between them). In the present case Plaintiff entered a formal complaint regarding the harassing behavior on July 20, 1999. Plaintiff was transferred to a different shift which Defendant knew, according to Plaintiff, that she would be unable to work on July 22, 1999. Plaintiff was then terminated for absenteeism on July 28, 1999. This short time span suffices to establish an inference of connection between the protected activity and the adverse employment action. As a result, Plaintiff has sufficiently pled facts from which the court could infer the presence of every element of a Title VII retaliation claim. Consequently, Defendant's motion to dismiss will be denied with respect to Plaintiff's Title VII retaliation claim.

## CONCLUSION

Plaintiff's complaint alleges facts sufficient to infer the presence of all required elements for both a hostile work environment claim and a retaliation claim under Title VII. Therefore, Defendant's motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will be denied.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.[4]

## *ORDER*

For the reasons set forth in the memorandum opinion files contemporaneously herewith,

IT IS ORDERED that Defendant's motion [Doc. #4] to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED.**

IT IS FURTHER ORDERED that Defendant's motion[Doc. #10] to strike as untimely Plaintiff's response brief to Defendant's motion to dismiss and to consider Defendant's motion as uncontested is **DENIED.**

IT IS FURTHER ORDERED that Defendant's second motion [Doc. #16] to strike as unauthorized Plaintiff's response to Defendant's reply brief is **GRANTED,**

---

4. Defendant also filed two motions to strike briefs filed by the Plaintiff. The first motion asks the court to strike as untimely Plaintiff's response brief to Defendant's motion to dismiss and to consider Defendant's motion as uncontested. Defendant's second motion asks the court to strike as unauthorized Plaintiff's response to Defendant's reply brief.

Plaintiff's initial response brief was filed only two working days late, and will not, in the interests of justice, be stricken. Defendant is correct, however, that Plaintiff's response to Defendant's reply brief is unauthorized under the rules of this court, and the court will grant Defendant's motion as to Plaintiff's second response brief.

and Plaintiff's response [Doc. #15] is **STRICKEN.**