FILED
United States Court of Appeals
Tenth Circuit

June 18, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

REBECCA MARTINEZ,

      Plaintiff - Appellant/
Cross - Appellee,

v.

SOUTHWEST CHEESE COMPANY,
LLC,

      Defendant - Appellee/
Cross - Appellant.

Nos. 14-2141 & 14-2175
(D.C. No. 2:12-CV-00660-KG-WPL)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **PHILLIPS**, Circuit Judges.

Rebecca Martinez brought this action in state court, claiming her former

employer, Southwest Cheese Company (SWC), fostered a hostile work environment

permeated with sexual harassment and discrimination that ultimately compelled her

to resign.  SWC removed the case to federal court and moved for summary judgment.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

The district court granted the motion on all but two state-law claims and, in doing so, excluded portions of three affidavits that Ms. Martinez had submitted in opposition to summary judgment. The district court remanded the two remaining state-law claims to state court and denied SWC's motion under Fed. R. Civ. P. 59(e) to set aside that ruling. Both sides appealed, and exercising jurisdiction under 28 U.S.C. § 1291, we now affirm.

I

The district court detailed the facts of this case, so we set forth only a general description of the events that gave rise to this action. Ms. Martinez is a Hispanic woman who was born in 1959. She worked for SWC from November 2005 until she resigned in April 2011. During her tenure, Ms. Martinez was promoted three times and eventually attained the position of Team Leader. She also earned multiple pay raises and was subjected to several disciplinary actions.

In September 2008, a coworker, Donnie Romero, grabbed Ms. Martinez's right buttock. Several days later he embarrassed her by announcing in the break room that he had seen her vacuuming at home naked. Ms. Martinez lodged a complaint with SWC's human resources director and the next day met with two managers. She feared losing her job, however, and felt pressured to agree to an oral reprimand of Mr. Romero. Nevertheless, Mr. Romero was issued a written reprimand and suspended for five days. Several months later, in July 2009, he left SWC, although he was rehired in 2011 despite evidence that he had sexually harassed other women

before leaving. In addition to Mr. Romero's conduct, Ms. Martinez knew that another employee, Cody Stewart, had exposed himself to other women.

In August 2010, Ms. Martinez sent a letter of grievance to SWC complaining of age, gender, and racial prejudice, sexual harassment, unjustified promotions and dismissals, and biased disciplinary actions. She met with a manager and the director of human resources and told them that she had documentation from other employees to substantiate her concerns. But when asked to produce this documentation, Ms. Martinez admitted that she had none and that she had made a terrible mistake. Consequently, SWC issued Ms. Martinez a written reprimand and suspended her for one day. Several months later, she resigned.

Ms. Martinez subsequently initiated this suit in state court, alleging a hostile work environment under Title VII of the Civil Rights Act of 1964 (Title VII) and the New Mexico Human Rights Act, N.M. Stat. Ann. §§ 28-1-1 to -14 (NMHRA); constructive discharge under Title VII, 42 U.S.C. § 1981, the Age Discrimination in Employment Act (ADEA), and a breach-of-contract theory; and state-law claims for intentional infliction of emotional distress (IIED) and negligent supervision.[1] SWC

_____

[1]     To the extent Ms. Martinez's opening brief analyzes an independent claim for retaliation, *see* Aplt. Br. at 46-47, 57, we do not consider her arguments because she did not raise a retaliation claim in the district court. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012) (declining to consider claim raised for the first time on appeal). Although Ms. Martinez alleged retaliation in her amended charge of discrimination, *see* Aplee. App. at 42, she presented no such claim in her complaint, *see id.* at 12-29. Hence, the district court evaluated the alleged retaliatory conduct only in analyzing her constructive discharge claim. *See* Aplt. App. at 58-61.

removed the case to federal court and moved for summary judgment. Ms. Martinez opposed the motion and attached to her response three affidavits purporting to show material fact issues precluding summary judgment. In an order dated July 1, 2014, the district court struck portions of the three affidavits, ruling that the excluded portions either created sham fact issues or were made without personal knowledge. Then, in a separate order dated July 10, 2014, the district court granted SWC summary judgment on all but the IIED and negligent supervision claims. The court declined to exercise supplemental jurisdiction over those claims and instead remanded them to state court. SWC sought to vacate the remand order by moving to alter or amend the judgment under Fed. R. Civ. P. 59(e), but on September 22, 2014, the court denied that motion as well.

Now in appeal number 14-2141, Ms. Martinez challenges the district court's exclusion of the portions of the three affidavits that she submitted with her summary judgment response. She also challenges the grant of summary judgment on her hostile work environment and constructive discharge claims. For its part, in appeal number 14-2175, SWC challenges the district court's orders remanding the IIED and negligent supervision claims to state court and denying its Rule 59(e) motion.

II

*A. Affidavits*

Our first task is to determine whether the district court abused its discretion in striking portions of the three affidavits that Ms. Martinez submitted with her response

- 4 -

to the summary judgment motion. *See Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164, 1169 (10th Cir. 2009) (reviewing the exclusion of affidavits at the summary judgment stage for abuse of discretion). The affidavits in question are those of Ms. Martinez and coworkers Misty English and Felipe Alvarado. Each affidavit contained specific paragraphs or statements that the district court excluded, either for creating sham fact issues, *see Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) ("[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony."), or for lack of personal knowledge, *see Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1201 (10th Cir. 2015) ("Information presented in the nonmovant's affidavit must be based on personal knowledge and must set forth facts that would be admissible in evidence." (brackets and internal quotation marks omitted)).

On appeal, Ms. Martinez challenges the exclusion of some twenty-five different statements and paragraphs, but she fails to demonstrate that the district court abused its discretion in excluding them. For example, in challenging the exclusion of specific comments and "jokes" made by Mr. Romero, which are cited in paragraph nine of her affidavit, Ms. Martinez argues that when was asked at her deposition whether she could "give any other examples of the inappropriate joking that went on with either Cody Stuart or others," she replied, "I would really have to "sit down and try to remember specifics." Aplt. Br. at 17 (internal quotation marks

omitted).[2] Ms. Martinez says this testimony does not contradict her affidavit, in which she attributed several wholly inappropriate remarks to Mr. Romero. But as the district court recognized, we have upheld the exclusion of affidavits for creating sham fact issues when the affidavit "provides information which the deponent claims she could not recall at her earlier deposition." Aplt. App. at 23 (Dist. Ct. Op. dated July 1, 2014) (citing *Juarez v. Utah*, 263 F. App'x 726, 734-36 (10th Cir. 2008) (affirming the exclusion of a post-discovery affidavit that provided evidence of alleged racial slurs that plaintiff claimed she could not recall at her deposition)); *see Mitchael v. Intracorp, Inc.*, 179 F.3d 847, 854-55 (10th Cir. 1999) (affirming the exclusion of a post-discovery affidavit "in which [the affiant] arguably contradicted his deposition, or at least more clearly recalled discussions and meetings"). Here, Ms. Martinez similarly recalled in her post-discovery affidavit specific comments or jokes made by Mr. Romero that she could not recall at her deposition. Given our precedent, we perceive no abuse of discretion in the district court's exclusion of this portion of her affidavit.

Ms. Martinez's other arguments fare no better. Indeed, we have examined each of the challenged statements and paragraphs and conclude that the district court

---

[2]    Ms. Martinez quotes the transcript of her video deposition, which was attached to her response to SWC's motion to strike. But the appendix she submitted on appeal contains neither her response to the motion to strike nor the relevant portion of her deposition transcript. We have confirmed her testimony by examining the record retained by the district court, but we remind litigants that we are under no obligation to search for documents that should have been included in the appendix. *See Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 907-08 (10th Cir. 2009).

did not abuse its discretion in excluding them. Consequently, we affirm the district court's exclusion of the relevant portions of the affidavits for substantially the same reasons stated by the district court in its order dated July 1, 2014.

*B. Summary Judgment*

We next review de novo the district court's grant of summary judgment, applying the same standard as the district court. *Ellis*, 779 F.3d at 1192. "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "If a reasonable jury could return a verdict for the nonmoving party, summary judgment is inappropriate." *Riser v. QEP Energy*, 776 F.3d 1191, 1195 (10th Cir. 2015) (internal quotation marks omitted). In conducting our review, we view the record and any reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Id.*

*1. Hostile Work Environment*[3]

*a. Purported Fact Issues*

Ms. Martinez first contends the district court made several adverse factual findings in granting summary judgment on her hostile work environment claims. To the extent this argument relies on the stricken portions of the affidavits, however, we have already determined that the district court acted within its discretion in excluding

---

[3]    The same legal standards apply to both Title VII and NMHRA claims. *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1213 n.2 (10th Cir. 2008).

the challenged statements and paragraphs. To the extent Ms. Martinez asserts the court resolved certain factual disputes against her, the argument is meritless because on each score the district court actually credited the facts in her favor. *Compare, e.g.,* Aplt. Br. at 39 ("The [district] court dismisses Cody Stewart's exposure of his genitals at a SWC sponsored event because there is no evidence that Plaintiff was aware of that incident." (internal quotation marks omitted)), *with* Aplt. App. at 31-32 (Dist. Ct. Op. dated July 1, 2014) (declining to strike statement that "[i]t was well known in the Southwest Cheese plant that Cody Stewart had a habit of exposing his genitals to female employees[]"), *and id.* at 47 (Dist. Ct. Op. dated July 10, 2014) (stating that "Plaintiff was also aware that another SWC employee, Cody Stewart, exposed himself to female employees and she was concerned that Stewart would do the same to her[]"). Otherwise, Ms. Martinez simply manufactures alleged disputes where none exist. *Compare, e.g.,* Aplt. Br. at 40 (arguing that the district court inappropriately found that Ms. Martinez made only one complaint to human resources when she actually made two—her initial complaint in September 2008 and a second complaint via her August 2010 grievance letter), *with* Aplt. App. at 46, 48-49 (Dist. Ct. Op. dated July 10, 2014) (discussing the September 2008 complaint to human resources and the August 2010 grievance letter).

### b. *Application of Time-Bar*

Next, Ms. Martinez challenges the district court's determination that her hostile work environment claims were time-barred. As the district court recognized,

both Title VII and the NMHRA require a plaintiff to file a charge of discrimination within three hundred days of an alleged unlawful employment practice. *See* 42 U.S.C. § 2000e-5(e)(1); N.M. Stat. Ann. § 28-1-10(A). Ms. Martinez filed her charge of discrimination on July 6, 2011, meaning that conduct that occurred more than three hundred days prior to that date, *i.e.*, September 9, 2010, would not be actionable unless "'an act' contributing to [the] hostile work environment took place" within the filing period, *Duncan v. Manager, Dep't of Safety, City & Cnty. of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). But as the district court explained, before any pre-filing period acts may be considered, a "Court must . . . determine whether the acts outside the filing period and the acts within the filing period 'are sufficiently related to constitute the same employment practice.'" Aplt. App. at 55 (Dist. Ct. Op. dated July 10, 2014) (quoting *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1140 (10th Cir. 2008)). "Factors [used] in making that determination include whether 'the pre- and post-limitations period incidents involved the same type of employment actions, occurred relatively frequently, and were perpetrated by the same' employees." *Id.* (quoting *Duncan*, 397 F.3d at 1309).

Here, almost all of the alleged misconduct occurred before September 9, 2010, including Mr. Romero's September 2008 grabbing and embarrassment of Ms. Martinez, his harassment of other women before his departure in July 2009, and Ms. Martinez's complaints in her August 2010 grievance letter, which resulted in

SWC's September 7, 2010 disciplinary action against her. Although Ms. Martinez attempts to avoid the time-bar by tying Mr. Romero's pre-filing period conduct to Mr. Stuart's acts of exposing himself, which apparently occurred in October 2010, the district court correctly explained that no reasonable jury could conclude that Mr. Stuart's conduct was part of the same hostile work environment because it was not the same type of conduct, *i.e.*, indecent exposure, it occurred infrequently, and it was committed by a different perpetrator. *Cf. Duncan*, 397 F.3d at 1309 (distinguishing "frequent instances of threatening physical and psychological harassment" from "off-color comments and rumor-spreading perpetrated by a completely different set of actors"). Although Ms. Martinez attempts to predicate her claims on the alleged misconduct of Mr. Stuart and another coworker, Gilbert Baca, she failed to exhaust her administrative remedies regarding these individuals. *See Jones v. Runyon*, 91 F.3d 1398, 1399 & n.1 (10th Cir. 1996); *Luboyeski v. Hill*, 872 P.2d 353, 355-56 (N.M. 1994). Indeed, she did not mention Mr. Stuart or Mr. Baca in her original charge of discrimination, an affidavit attached to it, or her amended charge of discrimination. Moreover, there was no reference to either person in her complaint, and, as the district court noted, Ms. Martinez's summary judgment response merely cited authority for this theory without actually arguing that the pre-September 9, 2010 conduct was related to acts that occurred during the filing period. Under these circumstances, Ms. Martinez's claims were time-barred, and we affirm the grant of summary judgment on her hostile work environment claims.

*2.  Constructive Discharge*

Ms. Martinez also challenges the grant of summary judgment on her constructive discharge claims brought under Title VII, § 1981, the ADEA, and her breach-of-contract theory.  "A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1270 (10th Cir. 2004).  Ms. Martinez says she was constructively discharged because she felt pressured to drop her complaint against Mr. Romero and she was compelled to resign once she learned he was returning to SWC.  But any pressure she felt to drop her complaint could not have been so great to force her to quit because she did not resign for another two-and-a-half years.  *See Ulibarri v. State of N.M. Corr. Acad.*, 2006-NMSC-009, ¶ 14, 131 P.3d 43, 49 (N.M. 2006) (finding no constructive discharge where plaintiff waited five months to resign).  And when she finally did resign, she gave SWC no reason to believe it was because Mr. Romero was being rehired.  *See West v. Marion Merrell Dow, Inc.*, 54 F.3d 493, 498 (8th Cir. 1995) ("An employee who quits without giving her employer a reasonable chance to work out a problem is not constructively discharged.").

In any event, these subjective views held by Ms. Martinez are irrelevant under our objective standard for evaluating constructive discharge claims.  *See Lockheed Martin Corp. v. Admin. Review Bd.*, 717 F.3d 1121, 1133 (10th Cir. 2013).  Here, the

objective evidence does not reflect a constructive discharge. Rather, as Ms. Martinez indicated at her exit interview, she decided to leave SWC "to go into a new venture." Aplt. App. at 166. Moreover, Ms. Martinez was promoted three times throughout her tenure, and she earned multiple pay raises, the last of which was commensurate with performance-based raises given to others in her position, *see id.* at 311. Although Ms. Martinez contends she was not promoted as quickly as her male counterparts, she offers no evidence of a discriminatory animus.[4] Likewise, she fails to offer any evidence demonstrating that she was disciplined more severely than her male counterparts. For instance, she complains that a male coworker's negligence caused an accident similar to one for which she was put on a performance improvement plan, while the male coworker was not. She fails to mention, however, that the male coworker was suspended for three days without pay. *See id.* at 216. Under these circumstances, no reasonable jury could rule in favor of Ms. Martinez. Accordingly,

---

[4] At her deposition, Ms. Martinez was asked to give the basis for her ADEA claim. She replied:

> Again, I'm not sure why I was being discriminated against. I did feel I was being discriminated against the entire time, whether it was because – I felt that it was hostile.
>
> I don't know whether it was against my gender. I don't know if it was against my race or my age or maybe it was because I was heavy.
>
> All I know is I was singled out and made very uncomfortable.

Aplt. App. at 195-96.

we affirm the district court's grant of summary judgment on her constructive

discharge claims.

*C. Cross-Appeal: Remand of State-Law Claims*

In its cross-appeal, SWC contends the district court abused its discretion in

remanding the IIED and negligent supervision claims to state court. *See Koch v. City*

*of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (reviewing for abuse of discretion).

But because we affirm the grant of summary judgment on the hostile work

environment and constructive discharge claims, there is no basis for reversing the

remand of the state-law claims. *See id.*

Still, SWC contends the district court effectively employed a per se rule to

decline supplemental jurisdiction simply because the federal claims were dismissed.

"[W]e have said the court should consider retaining state claims when, given the

nature and extent of pretrial proceedings, judicial economy, convenience, and

fairness would be served by retaining jurisdiction." *Wittner v. Banner Health*,

720 F.3d 770, 781 (10th Cir. 2013) (internal quotation marks omitted). We find no

indication that the court failed to consider these factors. In its order denying SWC's

Rule 59(e) motion, the district court explained its decision to remand the claims,

expressly discussing considerations such as the court's preparedness to rule on the

merits of the state-law claims, the inevitable delay caused by the denial of

supplemental jurisdiction, and matters of comity. Aplee. App. at 115. SWC insists

that remand is unfair because the state-law claims are time-barred under the

applicable statute of limitations, but the limitations period was tolled for thirty days following the grant of summary judgment, *see* 28 U.S.C. § 1367(d); *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1217 (10th Cir. 2014).  Under these circumstances, we cannot say the court abused its discretion in remanding the state-law claims to state court.  *See Lorillard Tobacco Co. v. Engida*, 611 F.3d 1209, 1213 (10th Cir. 2010) ("Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." (internal quotation marks omitted)).  Nor did the court abuse its discretion in denying SWC's Rule 59(e) motion.  *See Wittner*, 720 F.3d at 781 (reviewing denial of Rule 59(e) motion for abuse of discretion).

III

The judgment of the district court is affirmed.

Entered for the Court


Gregory A. Phillips
Circuit Judge